**TITANIUM METALS CORPORATION, Appellant,**

v.

**DALLAS COUNTY APPRAISAL DISTRICT and Dallas County Appraisal Review Board, Appellees.**

No. 05–97–00433–CV.

Court of Appeals of Texas, Dallas.

Aug. 2, 1999.

Motion to Publish Granted Oct. 7, 1999.

Wayne A. Risoli, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, for appellants.

Mike M. Tabor, Robert Wood, Clark, West, Keller, Butler & Ellis, LLP, Dallas, for appellee.

Before Justices WHITTINGTON, ROACH, and O'NEILL.

## OPINION

WHITTINGTON, Justice.

In this ad valorem tax case, Titanium Metals Corporation ("TMC") appeals a summary judgment granted in favor of the Dallas County Appraisal District and the Dallas County Appraisal Review Board (collectively, "Dallas County"). In a single point of error, TMC contends the trial judge erred in granting Dallas County's summary judgment motion and denying its own motion. For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

TMC is a Delaware corporation doing business in Grand Prairie, Texas. In 1993, TMC decided to relocate its Grand Prairie office and, at the same time, convert the office into a "simple sales office," rather than one carrying inventory and "finishing equipment." Thereafter, on December 30, 1993, TMC moved offices and transferred all of its office equipment to the new location, also in Grand Prairie. During the move, TMC transferred its inventory, machinery, and equipment from the Grand Prairie office to other offices outside Dallas and Tarrant counties.

Several months later, on April 14, 1994, TMC's property tax agent filed TMC's rendition for the 1994 tax year with the appraisal district. The rendition outlined all the business personal property owned by TMC and located in the taxing district on January 1, 1994. That rendition, according to the record, was incorrect because it (1) failed to reflect TMC's new address in Grand Prairie; and (2) included the value of the inventory, machinery, and equipment that had been moved out of the taxing district.[1] Although the 1994 appraisal roll reflected the address and values stated in the erroneous rendition, TMC did not file a written protest with the appraisal review board. *See* TEX. TAX CODE ANN. § 41.41 (Vernon Supp.1999).

On March 13, 1995, over a year after filing the erroneous rendition, TMC sent a letter to the appraisal district asking for a hearing before the appraisal review board.

---

1. The rendition was based on the previous year's rendition and included the following property: (1) inventory—$1,600,048; (2) sup- plies—$2500; (3) furniture and fixtures— $2434; and (4) machinery and equipment— $199,579.

In the letter, TMC asserted the request was being made (1) pursuant to section 25.25(c)(3) of the Texas Tax Code, and (2) because "[t]here were no assets or inventory at this location as of January 1, 1994." According to the letter, a hearing was necessary because the 1994 appraisal roll incorrectly included property which did not exist at the location described in the roll. In response to the letter, Dallas County amended the appraisal roll; however, the amendment changed only TMC's address, it did not reduce the value of the business personal property allegedly present at the new location.[2]

After receiving the review board's ruling, TMC filed suit against Dallas County in district court. Shortly thereafter, both sides moved for summary judgment. In its motion, TMC argued it was entitled to judgment as a matter of law because (1) the summary judgment evidence conclusively established that an error existed in the appraisal roll (i.e., that certain "nonexistent" property was included on the roll), and (2) the procedures set out in section 25.25(c)(3) could be used to rectify that error. Dallas County, on the other hand, argued it was entitled to judgment because (1) there was no error in the *form* of the property listed on the appraisal roll, and (2) section 25.25(c)(3) therefore provided no relief. After holding a hearing on the motions, the trial judge agreed with Dallas County and signed an order granting Dallas County's summary judgment motion and denying TMC's motion. This appeal followed.

### STANDARD OF REVIEW

The standard of review in summary judgment is well established. TEX.R.CIV.P. 166a(c); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990); *Nixon v.*

**2.** According to Dallas County, TMC's dispute over the "nonexistent" property was really a dispute over the *value* of the property at the location (because TMC *did* actually own busi-

*Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962); *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Ross v. Texas One Partnership*, 796 S.W.2d 206, 209 (Tex. App.—Dallas 1990), *writ denied per curiam*, 806 S.W.2d 222 (Tex.1991). When, as here, both sides file motions for summary judgment and one is granted and one is denied, we review all questions presented. *See Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). If we conclude the trial court committed reversible error, we render the judgment the trial court should have rendered. *See Tobin*, 316 S.W.2d at 400.

### SUMMARY JUDGMENT

In its sole point of error, TMC contends the trial judge erred in granting Dallas County's summary judgment motion and denying its own motion. According to TMC, summary judgment should have been granted in its favor because the evidence conclusively established (1) an error existed in the appraisal roll, and (2) the error was subject to correction under section 25.25(c)(3). After reviewing the record in this cause as well as the applicable law, we cannot agree with TMC.

Section 25.25 of the Texas Tax Code provides for late correction of appraisal roll errors only under certain, limited circumstances. *See* TEX. TAX CODE ANN. § 25.25 (Vernon 1992 & Supp.1999); *see also GE Capital Corp. v. Dallas Central Appraisal Dist.*, 971 S.W.2d 591, 593 (Tex. App.—Dallas 1998, no pet.). In this case, TMC sought correction of the appraisal roll under section 25.25(c)(3). That section states:

At any time before the end of five years after January 1 of a tax year, the appraisal review board, on motion of the chief appraiser or of a property owner,

ness personal property at the location) and a dispute relating to value could not be maintained under section 25.25(c).

may direct by written order changes in the appraisal roll to correct:

* * * *

(3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll.

Tex. Tax Code Ann. § 25.25(c) (Vernon 1992).

■ The property tax code does not explain what is meant by the phrase "inclusion of property that does not exist in the form or at the location described in the appraisal roll." *See Collin County Appraisal Dist. v. Northeast Dallas Assoc.,* 855 S.W.2d 843, 849 (Tex.App.—Dallas 1993, no writ). Nevertheless, this Court has defined the term "form" in the context of 25.25(c)(3) to mean "its identification as a type of property listed under section 25.02(a), such as real property, personal property, an improvement to real property, *or some other physical description of the property on the appraisal roll,* other than its appraised value or its use." *Dallas Central Appraisal Dist. v. G.T.E. Directories Corp.,* 905 S.W.2d 318, 321 (Tex.App.—Dallas 1995, writ denied) (emphasis added). Thus, the relief available under section 25.25(c)(3) applies only when *no* property exists in the form or at the location described in the appraisal roll. *See G.T.E. Directories,* 905 S.W.2d at 321. Stated differently, correction of the appraisal roll is only allowed when the appraisal roll erroneously reflects that a particular form of property exists at a specified location and, in fact, no such property exists at that location.

In this case, the "form" of the property described in the appraisal roll is "personal property." TMC does not dispute that it

3. This is evidenced by the fact that TMC is not seeking a change in the description or form of the property, but instead seeks a change in the value assigned to the property.

4. To hold otherwise would effectively negate the provisions of chapter 41 and section 25.25(d), both of which impose limits on the time a taxpayer has to challenge the appraised value of property in a taxing district. *See* Tex. Tax Code Ann. § 41.41 (Vernon 1992) (requiring protest of appraised value to be filed by June 1st or within thirty days of receiving notice); Tex. Tax Code Ann.

maintains personal property at the location described in the roll; rather, it argues that it does not maintain as *much* personal property there as is evidenced by the appraisal roll. This, in our view, is a complaint about the *value* of the property described in the appraisal roll, not the existence or nonexistence of certain "forms" of property at the particular location described.[3] Because we conclude that property *did* in fact exist in the form (*i.e.,* personal property) and at the location described in the appraisal roll, we conclude that amending the roll under section 25.25(c)(3) was not authorized. *See G.T.E. Directories,* 905 S.W.2d at 322–23; *but see Himont U.S.A., Inc. v. Harris County Appraisal Dist.,* 904 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1995, no writ) (concluding that portion of railcars allocable to interstate commerce did not exist at "location described in appraisal roll" and correction was therefore authorized under section 25.25(c)(3)). Accordingly, the trial judge did not err in granting summary judgment to Dallas County.[4]

We find support for this decision in this Court's 1995 opinion in *G.T.E. Directories,* 905 S.W.2d at 318–323. In that case, GTE sought to have the 1988 and 1989 appraisal rolls changed to reflect a decreased value of certain property it owned in Dallas County. According to GTE, the value of the property on the appraisal rolls was incorrect because the building on the property had been rendered "useless" by various "ground shifts." GTE sought correction of the rolls under section 25.25(c)(3), but the appraisal review board refused to order a change. Thereafter, GTE filed suit in district court, and the district court entered judgment in GTE's favor.

§ 25.25(d) (Vernon 1992) (requiring challenge to appraised value to be filed before taxes become delinquent). Under well-known rules of statutory construction, we may not interpret section 25.25(c)(3) so as to render other portions of the statute meaningless. *See G.T.E. Directories,* 905 S.W.2d at 321 (noting that statute must be construed to give effect to entire statute); *see also Maley v. 7111 Southwest Freeway, Inc.,* 843 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

On appeal, this Court reversed, holding that section 25.25(c)(3) did not authorize the requested change because the change sought was not a change in the "form ... described in the appraisal roll." *G.T.E. Directories*, 905 S.W.2d at 323. In reaching our decision, we noted that (1) GTE admitted that the description of the land in the appraisal rolls (*i.e.*, real property, land, and improvements) was correct; and (2) the appraisal rolls did not otherwise describe the form of the property. Because the property *did* exist in the form and at the location described in the rolls, we concluded section 25.25(c)(3) was not applicable. *See G.T.E. Directories*, 905 S.W.2d at 322–23. We reach a similar conclusion here today. In this case, just as in *GTE*, the property described in the appraisal roll *did* exist in the form and at the location described in the roll. Thus, we conclude, as we did in *GTE*, that section 25.25(c)(3) is not applicable.

■ In reaching this decision, we necessarily reject TMC's argument that the appraisal roll includes property that "does not exist in the form or at the location described" because it includes "inventory and machinery and equipment" that was never present in the taxing district. TMC's argument is premised on the assumption that we may look "behind the appraisal roll" to determine what *types* of personal property are included in the appraisal roll's description.[5] This, we may not do. *See G.T.E. Directories*, 905 S.W.2d at 321–22 (concluding we had no authority to "look behind" appraisal rolls— to commercial worksheets supporting rolls—because section 25.25(c)(3) required incorrect description to be of "the form ... *described in the appraisal roll*"). Because section 25.25(c)(3) only authorizes changes for errors in the description of the form or location of property *in the appraisal roll*, we conclude we have no authority to look behind the appraisal roll to

the rendition filed in this case. We reject TMC's arguments to the contrary.

We likewise reject TMC's argument that section 25.25(c)(3)'s legislative history requires a different outcome in this case. The "Background" section of section 25.25(c)(3)'s bill analysis states:

> At this time there is no clear authority for an appraisal review board to remove nonexistent property from the tax roll. Nonexistent property includes the property of businesses which have gone out of business prior to the beginning of the tax year and property improvements which were either demolished or moved before the beginning of the tax year.

BILL ANALYSIS, TEX.S.B. 379, 71st Leg., R.S. (1989). Contrary to TMC's contentions, this analysis is of no assistance in resolving the issues presented by this case because the case does not involve either (1) the property of a business that went out of business prior to the beginning of the tax year, or (2) property *improvements* that were either demolished or moved before the beginning of the tax year. Thus, we conclude that, whatever this portion of the bill analysis may mean, it is not relevant to our decision in this case. *See G.T.E. Directories*, 905 S.W.2d at 322 (concluding that whatever this portion of bill analysis may mean, it was not relevant to issues in case because nothing in record suggested GTE went out of business prior to beginning of tax year).

For the reasons stated, we conclude the trial judge properly granted summary judgment in favor of Dallas County and against TMC. We overrule TMC's sole point of error. We affirm the trial court's judgment.

---

**5.** TMC's brief clearly states that "the 1994 appraisal roll included property—the Inventory and Machinery and Equipment—that never existed" at either of TMC's Grand Prairie locations. The terms "inventory," "machinery," and "equipment" do not appear in the appraisal roll, although they do appear in TMC's 1994 rendition. Thus, TMC's argument (that the appraisal roll includes property not present at the Grand Prairie location) requires us to consider information provided in the rendition, not just the appraisal roll.