**U. LAWRENCE BOZE' & ASSOCIATES, P.C. and U. Lawrence Boze', Appellants,**

v.

**HARRIS COUNTY APPRAISAL DISTRICT, Appellee.**

No. 01–10–00016–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 11, 2011.

U. Lawrence Boze', Houston, TX, for Appellants.

Corey R. Ouslander, Mario L. Dell' Osso, Olson & Olson, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

In this ad valorem tax case, appellants, U. Lawrence Boze' & Associates, P.C., and U. Lawrence Boze' (collectively, "Boze'"), sued the Harris County Appraisal District ("HCAD") to challenge the appraised value of business personal property for the 2003, 2004, and 2005 tax years. HCAD moved to dismiss for lack of jurisdiction, contending that Boze' did not substantially comply with the prepayment requirements of Tax Code section 42.08. The trial court granted the motion and dismissed the suit. In one issue, Boze' contends that the trial court erred in granting HCAD's motion because HCAD did not present sufficient evidence to support a determination that Boze' did not substantially comply with section 42.08.

We affirm.

## Background

Boze', a solo attorney, leased office space at 2208 Blodgett Street in Houston to operate his law office. Boze' had maintained a "business personal property" ac-count for this address with HCAD since at least 1991. In February 2000, Boze' moved his law office and its associated property to his residential homestead, located at 2212 Blodgett Street, two lots from the office's original location. Although Boze' alleges that he completed a "change of address" form with the United States Postal Service, he did not specifically inform HCAD of the office's move, nor did he file an updated rendition of business personal property with HCAD reflecting the new location of the office and the property. HCAD continued to send personal property appraisal notices to Boze's old address at 2208 Blodgett.

Boze' allegedly discovered this error in 2006, informed HCAD "that it was sending personal property appraisal notices to the wrong address," and notified HCAD that he wished to protest the assessed taxes for tax years 2000–2006. After allegedly being informed that it was "too late" to protest the appraised value of his property for any tax year other than 2006, Boze' filed an administrative protest for his 2006 taxes pursuant to Chapter 41 of the Tax Code. On the protest form, Boze' manually changed his office's address to 2212 Blodgett Street and stated that "I have not practiced law at 2208 Blodgett in 6 [years] & never owned that property." Boze' successfully protested the 2006 appraised value of the property before the Harris County Appraisal Review Board ("the Board") and received a significant reduction in the value.

Boze' alleged that over the next two years he received delinquent tax statements from Linebarger, Goggan, Blair & Sampson, LLP, on behalf of the Harris County Tax Assessor–Collector, for tax years 1998–2005. He further alleged that he contacted Linebarger Goggan each time he received a delinquent tax statement and disputed the taxes owed for tax years

2003–2005 because these taxes were based on business personal property that did not exist at 2208 Blodgett, the address contained in HCAD's records for his law office for these years. In 2008, a representative of HCAD informed Boze' that, although he could no longer protest the value of his personal property for tax years 2003–2005 pursuant to Chapter 41, he could file a correction motion pursuant to Tax Code section 25.25 to correct the appraisal rolls.

On October 22, 2008, Boze' filed a "Personal Property Correction Request/Motion" with HCAD, requesting the correction of the appraisal rolls for tax years 2003–2005. Boze' selected four "correction type" options on the form: (1) "Property not located at address shown on roll"; (2) "Error in name/address/property description"; (3) "Property over-appraised by more than 1/3"; and (4) "Property does not exist." Boze' further indicated that he had not paid any of the taxes assessed on the property. As an explanation for the requested corrections, he stated "no basis for more than 2,000% increase in value of personal property for years 2005, 2004, and 2003 from 2000[,] also 2007 and 2006 reflect the value of the property after hearing." In the "Value Information" section of the form, Boze' stated that he believed that the property should be valued at $2,600 for the 2003 tax year, $2,200 for the 2004 tax year, and $1,800 for the 2005 tax year. After neither HCAD nor the Board took any action on this motion, Boze' filed a second correction request

form on March 17, 2009. He selected the same four "correction type" options, plus a fifth option: "Clerical, Mathematical, Computer, Transcription Error." On this form, Boze' stated that his valuation estimate for the property was $1,700 for all three disputed tax years.

On April 8, 2009, Boze' and a representative of HCAD attended a hearing on the correction motion before a panel of the Board. At the hearing, Boze' allegedly argued that no HCAD representatives had visited his home at 2212 Blodgett during 2003–2005 to appraise the business personal property, and, therefore, HCAD "could not know if any said personal property even existed." He also allegedly informed the Board that he had not paid the assessed taxes "because he did not have the money to pay over $39,000 in taxes for the tax years in question." Boze' alleged that a Board member stated, in reliance on a statement by the HCAD representative, that a five-year statute of limitations barred HCAD from collecting the taxes assessed for the 2003 tax year.[1] The Board denied Boze's correction motion for this tax year. The Board member further stated that the panel would dismiss Boze's correction motions for the 2004 and 2005 tax years because Boze' had admitted that he did not pay any amount of the assessed taxes for those two years.

Shortly after the hearing, Boze' received an order determining protest for each of the three contested tax years. The order

---

1. Boze' cites no authority for this proposition that collection is barred after five years. The "Appraisal Review Board Panel Recommendation" for the 2003 tax year states as the reason for denying the protest that "[the protest] exceeds [statute] of limitations per HCAD's counsel 5 [years] from cert. date." Because this case involves a correction motion, this statement most likely refers to Tax Code section 25.25(c), which provides that "[t]he appraisal review board, on motion of

the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll for *any of the five preceding years* ...." TEX. TAX CODE ANN. § 25.25(c) (Vernon 2008) (emphasis added); *see also Harris Cnty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 98 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (noting that section 25.25(c)(3) "provide[s] a limited five-year exception" to changing appraisal records).

for the 2003 tax year denied the correction motion, and the orders for the 2004 and 2005 tax years dismissed the respective correction motions for those two years. The 2004 and 2005 orders both included the following paragraph:

> In considering a protest under Texas Tax Code Sec. 41.411 or a joint motion for correction of a substantial error under Texas Tax Code Sec. 25.25, the Appraisal Review Board determined that the property owner had not substantially complied with the tax payment requirements of Texas Tax Code Sec. 42.08 and, as provided by law, has forfeited his right to proceed to a final determination of his protest or motion.

The orders also informed Boze' that, if he appealed the orders to the district court, he had to pay the "lesser of the amount of taxes not in dispute or the amount of taxes due on the property under the order from which the appeal is taken, to each taxing unit before taxes for the year become delinquent." Boze' timely filed a petition for judicial review of all three of the Board's orders.

In his petition for review, Boze' contended that HCAD's appraisal of his business personal property was "excessive, fraudulent, and arbitrary and [was] not based on personal inspection at any location." Boze' contended that he was entitled to a correction of the appraisal rolls under Tax Code section 25.25(c)(3), which allows correction of the "inclusion of property that does not exist in the form or at the location described in the appraisal roll" because Boze' owned no business personal property located at 2208 Blodgett, the address on file with HCAD for his law office, during 2003–2005. Boze' also argued that he should not be required to pre-pay his taxes before the delinquency date as a prerequisite to judicial review because he "disputed all of the alleged taxes in question . . . since such

taxes are based on alleged appraisals by Defendant HCAD of business personal property which did not exist in any form at the 2208 Blodgett location indicated in the appraisal roll." Boze' further argued that, due to the "five year statute of limitations," HCAD could not collect the delinquent taxes for the 2003 tax year. Boze' included with his petition an oath of inability to pay the taxes at issue, first filed with the trial court on May 29, 2009.

HCAD moved to dismiss the suit for lack of jurisdiction and requested a hearing to determine whether Boze' had substantially complied with the payment requirements of Tax Code section 42.08. HCAD contended that the trial court should dismiss the case because Boze' did not pay the lesser of the undisputed amount of taxes owed on the property or the current tax liability before each tax year's relevant delinquency date, and, therefore, Boze' did not exhaust his administrative remedies as required by Tax Code section 25.25(e), which requires a taxpayer to comply with section 42.08 or the taxpayer forfeits the right to have the appraisal review board finally determine the correction motion.

HCAD further contended that Boze's oath of inability to pay taxes, filed with his petition for review on May 29, 2009, did not substantially comply with the requirements of Tax Code section 42.08(d) because this oath was filed more than three years after the delinquency date for the 2005 tax year—and more than one month after the Board issued its orders determining Boze's correction motions—and thus did not provide sufficient notice to the taxing authorities that Boze' could not pay the assessed taxes. HCAD also argued that any claim that Boze' should be excused from the prepayment requirements of section 42.08 because all correspondence from HCAD and the taxing authorities,

including appraisal notices and tax bills, was delivered to 2208 Blodgett, and not 2212 Blodgett, was not meritorious because Boze', who had had an account with HCAD regarding the subject property since 1991 and had paid the assessed taxes for tax years 2000–2002, after he moved his law office, did not follow the statutory procedures for protesting HCAD's alleged failure to deliver a required notice.

In response, Boze' argued that his suit for judicial review was not seeking "a re-appraisal of the value of the business personal property in question" but was seeking to "correct errors for business personal property that did not exist in its form and at the location indicated by Defendant HCAD for tax years 2003, 2004, and 2005." Boze' contended that he was not required to pre-pay any of the taxes as a prerequisite for filing a petition for review because he "disputed all of the alleged taxes due on business personal property for tax years 2003, 2004, and 2005." Boze' argued that the fact that he had admitted in his correction motion that he had taxable business property located at 2212 Blodgett did not affect his contention that "there was no undisputed amount of taxes that had to be paid for non-existent business personal property located at 2208 Blodgett." Boze' further stated that all notices from HCAD and the taxing authorities regarding payment of taxes were sent to 2208 Blodgett, and not 2212 Blodgett, and therefore Boze' "had no knowledge of the taxes assessed for his alleged business personal property or the delinquency date for such taxes for each of the tax years in question until 2006." Boze' also contended that he informed the Harris County Tax Assessor–Collector "when he became aware of the alleged personal property taxes due plus penalties, in 2006, that he could not pay taxes for personal property that never existed." He argued that his "conduct in notifying the interested parties of his ina-bility to pay plus Defendant HCAD's failure to present any evidence of [his] ability to pay satisfies the substantial compliance provision for Section 42.08." These conclusory statements are the only indications that Boze' contacted the Harris County Tax Assessor–Collector's office and informed it that he could not pay the assessed taxes.

On December 7, 2009, the trial court held a hearing to determine whether Boze' had substantially complied with section 42.08. On appeal, Boze' contends that the judge at this hearing was an "unnoticed, surprise, visiting judge." Boze' did not object at any time to this judge presiding over the hearing. Ultimately, the trial court ruled that Boze' did not substantially comply with section 42.08 and granted HCAD's motion to dismiss for lack of jurisdiction.

Boze' timely requested findings of fact and conclusions of law. After the trial court failed to file such findings and conclusions, Boze' filed a notice of past due findings and conclusions. The trial court again failed to file findings and conclusions. This appeal followed.

## Standard of Review

Compliance with the prepayment requirements of section 42.08 "is a jurisdictional prerequisite to [the] district court's subject matter jurisdiction to determine property owner's rights." *Lawler v. Tarrant Appraisal Dist.*, 855 S.W.2d 269, 271 (Tex.App.-Fort Worth 1993, no writ). Whether a trial court has subject matter jurisdiction is a question of law, and, therefore, we review de novo a trial court's ruling on a motion to dismiss for lack of jurisdiction. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex.

2004) (holding that we review trial court's ruling on plea to the jurisdiction de novo); *Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 571 (Tex.App.-Fort Worth 2003, pet. denied) (reviewing dismissal for want of jurisdiction based on taxpayer's alleged failure to exhaust administrative remedies de novo); *Dallas Cent. Appraisal Dist. v. 717 S. Good Latimer Ltd.*, No. 05–09–00779–CV, 2010 WL 1729343, at *1 (Tex.App.-Dallas Apr. 29, 2010, pet. denied) (mem. op.) (reviewing de novo grant of plea to the jurisdiction based on failure to substantially comply with section 42.08).

### Substantial Compliance with Section 42.08

■ A taxpayer owes a continuing obligation to pay taxes on his property. *Atascosa Cnty. v. Atascosa Cnty. Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex.1999). The State of Texas has jurisdiction to tax tangible personal property if the property is located in Texas for longer than a temporary period. TEX. TAX CODE ANN. § 11.01(c)(1) (Vernon 2008); *id.* § 21.02(a)(1) (Vernon Supp. 2010) ("[T]angible personal property is taxable by a taxing unit if it is located in the unit on January 1 for more than a temporary period."); *see also id.* § 11.14(a) (Vernon 2008) ("A person is entitled to an exemption from taxation of all tangible personal property ... that the person owns and that is not held or used for production of income.").

Each tax year, a person is required to "render for taxation all tangible personal property used for the production of income that the person owns ... on January 1." *Id.* § 22.01(a) (Vernon Supp. 2010); *Starflight 50, L.L.C. v. Harris Cnty. Appraisal Dist.*, 287 S.W.3d 741, 748 (Tex.App.-Houston [1st Dist.] 2009, no pet.); *see also Harris Cnty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 92 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) ("The word 'shall' in section 22.01(a) is mandatory, not discretionary."). The rendition statement shall contain, among other requirements, the property owner's name and address, a description of the property, the "physical location or taxable situs" of the property, and a good faith estimate of the property's market value. TEX. TAX CODE ANN. § 22.01(a). If the property owner fails to timely file a rendition statement, the chief appraiser is required to impose a penalty upon the owner. *Id.* § 22.28(a) (Vernon 2008). It is undisputed that after moving his law office to 2212 Blodgett in 2000, Boze' did not file a rendition statement with HCAD that reflected the office's correct address and the correct situs of his business personal property.

Property owners are entitled to administratively protest certain actions, such as the determination of the appraised value of the owner's property, to the appraisal review board pursuant to Chapter 41. *See id.* § 41.41(a) (Vernon 2008). Generally, a property owner must file a written notice of protest within thirty days after the owner receives notice of the appraised value of the property. *Id.* § 41.44(a) (Vernon 2008); *see also id.* § 25.19(d) (Vernon 2008) (providing that failure to receive notice of appraised value "does not affect the validity of the appraisal of the property [or] the imposition of any tax on the basis of the appraisal"). A property owner may also protest the failure of the chief appraiser to provide or deliver "any notice to which the property owner is entitled." *Id.* § 41.411(a). It is undisputed that Boze' did not avail himself of his Chapter 41 administrative protest remedies for any of the tax years in question, nor did he protest, pursuant to section 41.411, the chief appraiser's alleged failure to deliver the appraisal notices for the business personal

property for the relevant tax years to his correct address.

 A mistake in the name or address of a property owner does not affect the validity of the appraisal records or of the tax imposed, and such mistakes "may be corrected as provided by [the Tax Code]." *Id.* § 25.02(b) (Vernon 2008). Tax Code section 25.25 allows the chief appraiser to, at any time, change the appraisal roll to correct an erroneous address. *Id.* § 25.25(b) (Vernon 2008). This section also allows a property owner to move to correct errors in the appraisal records after the time limits for a Chapter 41 administrative protest have expired; however, "[a] property owner's ability to change approved tax appraisal rolls is clearly limited." *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 542 (Tex.App.-Dallas 2000, pet. denied). A property owner may move the appraisal review board to correct, for any of the five preceding tax years, (1) clerical errors that affect a property owner's liability for a tax imposed in that tax year; (2) multiple appraisals of a property in that tax year; or (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll.[2] TEX. TAX CODE ANN. § 25.25(c). If the chief appraiser and the property owner do not agree to the correction within fifteen days of the date the motion is filed, a movant under subsection (c) or (d) of section 25.25 "is entitled on request to a hearing on and a determination of the motion by the appraisal review board." *Id.* § 25.25(e). "A property owner who files the [section 25.25(c)] motion must comply with the payment requirements of Section 42.08 or forfeit the right to a final determination of the motion [by the appraisal review board.]" *Id.*

Tax Code section 42.08 generally applies to a suit for judicial review of an adverse appraisal review board determination of the appraised value of the property pursuant to Chapter 41, but section 25.25(e) also requires compliance with section 42.08 before the appraisal review board may determine a correction motion. *See id.; see also id.* § 41.411(c) ("A property owner who protests as provided by this section must comply with the payment requirements of Section 42.08 or the property owner forfeits the property owner's right to a final determination of the protest [of the alleged failure of the chief appraiser to deliver a required notice]."). Section 42.08 requires that:

> Except as provided in Subsection (d), a property owner who appeals as provided by this chapter must pay taxes on the property subject to the appeal in the

---

2. Before the taxes become delinquent, a property owner may also move "to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property. However, the error may not be corrected unless it resulted in an appraised value that exceeds by more than one-third the correct appraised value." TEX. TAX CODE ANN. § 25.25(d) (Vernon 2008). In his correction motion, Boze' asserted the following desired "correction types": (1) property not located at address shown on roll; (2) error in name/address/property description; (3) *property over-appraised by more than 1/3;* and (4) property does not exist. (Emphasis added.) Boze' thus asserted that the appraisal records should be changed pursuant to both section 25.25(c) and section 25.25(d), although he classifies the correction motion solely as a 25.25(c) motion throughout the litigation and on appeal. It is undisputed that Boze' did not file a correction motion pursuant to section 25.25(d) until October 22, 2008, more than two years after the taxes for the 2005 tax year became delinquent. *See id.* (requiring a 25.25(d) motion to be filed prior to taxes becoming delinquent); *Interstate Apartment Enters. v. Wichita Appraisal Dist.*, 164 S.W.3d 448, 451 (Tex.App.-Fort Worth 2005, no pet.) ("[A] section 25.25 motion must be filed before the date the taxes become delinquent.").

amount required by this subsection before the delinquency date or the property owner forfeits the right to proceed to a final determination of the appeal. The amount of taxes the property owner must pay on the property before the delinquency date to comply with this subsection is the lesser of:

> (1) the amount of taxes due on the portion of the taxable value of the property that is not in dispute; or
> (2) the amount of taxes due on the property under the order from which the appeal is taken.

*Id.* § 42.08(b) (Vernon Supp. 2010). Generally, with some exceptions not applicable here, "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed." *Id.* § 31.02(a) (Vernon 2008); *see also id.* § 31.04 (Vernon 2008) (providing that delinquency date may be postponed in certain circumstances). Under Tax Code section 31.01, the assessor for each taxing unit is required to prepare and mail a tax bill to each property owner listed on the tax roll; however, "failure to send or receive the tax bill required by [section 31.01] does not affect the validity of the tax, penalty, or interest, *the due date,* the existence of a tax lien, or any procedure instituted to collect a tax." *Id.* § 31.01(a), (g) (Vernon Supp. 2010) (emphasis added).

Subsection (d) of section 42.08 provides an exception to the prepayment requirement of subsection (b) and allows that:

> After filing an oath of inability to pay the taxes at issue, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts.... If the court determines that the property owner has not substantially complied with this section, the court shall dismiss the pending action. If the court determines that the property owner has substantially but not fully complied with this section, the court shall dismiss the pending action unless the property owner fully complies with the court's determination within 30 days of the determination.

*Id.* § 42.08(d). The Austin Court of Appeals, in *J.C. Evans Construction Co. v. Travis Central Appraisal District,* held that "a property owner may avoid the forfeiture provision by substantially complying with either section 42.08(b) or (d), or some combination of both." 4 S.W.3d 447, 450 (Tex.App.-Austin 1999, no pet.).

As the party seeking dismissal of the case for lack of subject-matter jurisdiction, HCAD had the burden to establish that Boze' did not substantially comply with the prepayment requirements of Tax Code section 42.08. *See id.* at 449; *Lee v. El Paso Cnty.,* 965 S.W.2d 668, 671 (Tex. App.-El Paso 1998, pet. denied) ("The party seeking dismissal for lack of jurisdiction maintains the burden of proof."). Whether a property owner has substantially complied with section 42.08 is a factual matter to be determined by the trial court on a case-by-case basis. *J.C. Evans,* 4 S.W.3d at 449; *Harris Cnty. Appraisal Dist. v. Bradford Realty, Ltd.,* 919 S.W.2d 131, 135 (Tex.App.-Houston [14th Dist.] 1994, no writ). We construe tax statutes strictly against the taxing authority and liberally in favor of the taxpayer. *J.C. Evans,* 4 S.W.3d at 449 (citing *Arch Petroleum, Inc. v. Sharp,* 958 S.W.2d 475, 478 (Tex.App.-Austin 1997, no pet.)). If a statute is designed to relieve a property owner from the harshness of the forfeiture of appeals, we should liberally construe the statute to accomplish that purpose. *See id.; Jackson Hotel Corp. v. Wichita Cnty. Apprais-*

*al Dist.*, 980 S.W.2d 879, 882 (Tex.App.-Fort Worth 1998, no pet.).

■ The procedures provided in the Tax Code for "adjudication of the grounds of protest … are exclusive." TEX. TAX CODE ANN. § 42.09(a) (Vernon 2008); *see also Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex.2006) (per curiam) ("The Texas Tax Code provides detailed administrative procedures for those who would contest their property taxes."). "Compliance with the tax code is a jurisdictional prerequisite to pursuing judicial review, and failure to strictly comply with the time lines set forth in the code is a jurisdictional defect precluding review." *Tarrant Appraisal Dist. v. Gateway Ctr. Assocs., Ltd.*, 34 S.W.3d 712, 714 (Tex. App.-Fort Worth 2000, no pet.); *see also Webb Cnty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex.1990) ("[J]udicial review of administrative orders is not available unless all administrative remedies have been pursued to the fullest extent.").

We must determine whether Boze', who admittedly has never paid any portion of the taxes assessed for tax years 2003–2005 and who did not file an oath of inability to pay until he filed his suit for judicial review in the district court on May 29, 2009, more than one month after the Board dismissed his correction motions, substantially complied with either subsection (b) or subsection (d) of section 42.08.

**A. Substantial Compliance with Section 42.08(b)**

■ Section 42.08(b) requires a property owner, to avoid forfeiture of his right to file a suit for judicial review, to pay either the lesser of the amount of taxes not in dispute or the current tax liability prior to the delinquency date for the tax year. TEX. TAX CODE ANN. § 42.08(b); *J.C. Evans*, 4 S.W.3d at 450. Section 42.08 does not

immediately require full compliance upon filing the suit for judicial review; if a property owner "substantially complies," the owner receives a thirty-day grace period to fully comply before the trial court is required to dismiss the action. TEX. TAX CODE ANN. § 42.08(d). "Substantial compliance" means that one has performed the "essential requirements" of a statute and it "excuse[s]" those deviations from the performance required by statute which do not seriously hinder the legislature's purpose in imposing the requirement." *Mo. Pac. R.R. Co. v. Dallas Cnty. Appraisal Dist.*, 732 S.W.2d 717, 721 (Tex.App.-Dallas 1987, no writ). In *Missouri Pacific*, the Dallas Court of Appeals identified two objectives of section 42.08(b)'s prepayment requirement: (1) to ensure that property owners "would not use the right of judicial review as a subterfuge for delaying or avoiding the payment of at least some tax"; and (2) to "assure that the activities of the local governments which relied on ad valorem taxes would not be unduly impeded by granting the property owner the right of judicial review." *Id.; see J.C. Evans*, 4 S.W.3d at 451.

Courts have repeatedly held that if the property owner does not pay any portion of the assessed taxes by the delinquency date, even if it later pays some or all of the taxes after the due date, the property owner has not substantially complied with section 42.08(b). *J.C. Evans*, 4 S.W.3d at 451; *see Gen. Motors Acceptance Corp. v. Harris Cnty. Mun. Util. Dist. No. 130*, 899 S.W.2d 821, 823 (Tex.App.-Houston [14th Dist.] 1995, no writ) ("The courts of appeals have consistently held that if the taxpayer does not pay any of the taxes on the property by the delinquency date, the taxpayer has not substantially complied and the appeal should be dismissed."); *Harris Cnty. Appraisal Dist. v. Dipaola Realty Assocs.*, 841 S.W.2d 487, 490 (Tex. App.-Houston [1st Dist.] 1992, writ denied)

("Here, however, where *no* tax money was timely paid, a finding of substantial compliance is not appropriate.") (emphasis in original); *Filmstrips & Slides, Inc. v. Dallas Cent. Appraisal Dist.*, 806 S.W.2d 289, 291 (Tex.App.-Dallas 1991, no writ) ("Either the time requirement is complied with or it is not. . . . [W]e are not persuaded that paying after the tax delinquency deadline will suffice because any forgiveness will eventually lead to a complete obliteration of the time requirement."); *see also Cent. Appraisal Dist. of Rockwall Cnty. v. Lall*, 924 S.W.2d 686, 690 (Tex. 1996) ("[A] person judicially challenging a property tax must tender at least the amount conceded to be owed in order to maintain the action.").

Here, it is undisputed that Boze' never paid any portion of the assessed taxes for tax years 2003–2005 at any time, let alone by the delinquency dates for these years: February 1, 2004, February 1, 2005, and February 1, 2006, respectively. Boze', however, argues that he was not required to prepay any amount of the taxes because section 42.08(b) requires payment of the lesser of the amount *not in dispute* or the current tax liability, and, because he contends that he had no taxable personal property located at 2208 Blodgett, the address listed on HCAD's appraisal rolls for his law office for the 2003–2005 tax years, he disputed the *entire* amount of the assessed taxes, and therefore the "lesser amount" under section 42.08(b) was zero. HCAD responds that Boze' is not excused from the prepayment requirement because it is undisputed that he moved his taxable personal property two lots over to 2212 Blodgett and, thus, although the specific situs of the property named in HCAD's records was erroneous, he owned taxable personal property within the taxing units for the tax years at issue. HCAD points out that Boze' did not inform it of his address change until 2006, six years after

he moved; he never filed an amended rendition of taxable personal property as required by Tax Code section 22.01; he admitted in his correction motions that the value of his taxable personal property located at 2212 Blodgett—that he had moved from 2208 Blodgett in 2000—was at least $1,700; and he did not receive tax bills at 2212 Blodgett for this personal property until he notified HCAD of the address change.

In *Pratt & Whitney Canada, Inc. v. McLennan County Appraisal District*, the Waco Court of Appeals addressed whether a property owner was required to prepay assessed taxes as a prerequisite to appeal when the owner argued that it owed *no* taxes because the appraisal district lacked jurisdiction to assess taxes on the property, and thus the "entire amount" of taxes was in dispute. 927 S.W.2d 641, 643 (Tex. App.-Waco 1996, writ denied) (per curiam). The McLennan County Appraisal District cited, among other cases, *Dipaola Realty* and *Filmstrips & Slides* for the proposition that the property owner had to pay *some amount* as a prerequisite to appeal under section 42.08(b). *See id.* at 643–44. The Waco court, however, distinguished that line of cases because "none of those cases concern the jurisdiction to impose a tax on the property in question, but rather, concern disputes over the valuation of property that is admittedly taxable." *Id.* at 644. The court ultimately held that "where a property owner asserts that the District lacks jurisdiction to tax certain property, and no tax was imposed during the previous year, then the property owner does not lose its right to proceed to a final determination on appeal based upon its failure to timely pay the taxes assessed by the District." *Id.*

Here, unlike in *Pratt & Whitney*, Boze' is not asserting that the taxing authorities of Harris County lack jurisdiction to as-

sess taxes on his business personal property. Boze' admits that he owned taxable business personal property within the jurisdiction of the taxing authorities for the tax years 2003–2005, albeit at a different location within the taxing unit than was listed in HCAD's appraisal records. Boze' does not assert that he received tax bills for the subject property at 2212 Blodgett during 2003–2005, and thus there is no contention that this property was subject to double taxation. In 2000, Boze' moved his taxable business personal property to 2212 Blodgett and did not inform HCAD of this move until 2006; as a result, HCAD and taxing authority officials believed that his taxable property was still located at 2208 Blodgett and accordingly mailed notices and bills to that address.

Boze' cites the Dallas Court of Appeals' decision in *Titanium Metals Corp. v. Dallas County Appraisal District,* for the proposition that relief was available to him under section 25.25(c)(3) because correction of the appraisal rolls under this subsection "is only allowed when the appraisal roll erroneously reflects that a particular form of property exists at a specified location and, in fact, no such property exists at that location." 3 S.W.3d 63, 66 (Tex.App.-Dallas 1999, no pet.). In *Titanium Metals,* the property owner did not dispute that it owned personal property at the location described in the appraisal rolls; rather, it argued that because it had moved *some* of its personal property to a location outside of the jurisdiction, it "[did] not maintain *as much* personal property there as is evidenced by the appraisal

roll." *Id.* (emphasis in original). The Dallas Court construed this argument as a complaint about the value of the property described in the appraisal roll, and it concluded that because property did exist in the form and location described in the appraisal roll, amendment of the roll under section 25.25(c)(3) was not authorized. *Id.*

Boze' argues that because he never had business personal property at the location described in the appraisal rolls for tax years 2003–2005, unlike Titanium Metals, which had at least some property at the location of record, he can use section 25.25(c)(3) to change the appraisal rolls. The Dallas Court in *Titanium Metals* did not, however, address substantial compliance with section 42.08, which is the issue in this case, and Boze' provides no argument for why this decision excuses him from prepaying the taxes owed on the business personal property admittedly located within the jurisdiction of the taxing unit as a prerequisite to the appraisal review board's deciding his section 25.25(c) motion and to his suit for judicial review to the district court.[3]

We conclude that because Boze' admitted that he owned the taxable business personal property at issue in this case, moved his business without notifying the taxing authorities for six years, and maintained that property within the jurisdiction of the taxing authorities during the relevant tax years, albeit at an address not named in HCAD's appraisal records, he was not excused from the prepayment requirement of section 42.08(b). We therefore hold that, because Boze' did not pay

---

**3.** Furthermore, to the extent Boze' contends that HCAD's initial appraisal of his property was "[e]xcessive, fraudulent, and arbitrary," we construe this as a complaint about the *value* of the property, and this type of correction is inappropriate for a section 25.25(c)(3) motion. *See Titanium Metals Corp. v. Dallas Cnty. Appraisal Dist.,* 3 S.W.3d 63, 66 (Tex.

App.-Dallas 1999, no pet.); *see also Tex. Gas,* 105 S.W.3d at 98–99 (noting that section 25.25(c)(3) allows corrections for property that does not exist because it "does not have any physical location in Texas throughout the entire taxable year" while section 25.25(d) provides relief "for property that changes value").

any portion of the assessed taxes before the relevant delinquency dates, he did not substantially comply with section 42.08(b).

### B. Substantial Compliance with Section 42.08(d)

Although section 42.08(b) generally requires a property owner to prepay the lesser of the amount of taxes not in dispute or the current tax liability as a prerequisite to appeal, subsection (d) excuses the owner from this requirement if the owner files an "oath of inability to pay the taxes at issue" and the trial court determines that "such prepayment would constitute an unreasonable restraint on the party's right of access to the courts." TEX. TAX CODE ANN. § 42.08(d).

In J.C. Evans, which did not involve a correction motion under section 25.25(c), the taxpayer admittedly did not file an oath of inability to pay; however, it contacted the assessor-collector on the delinquency date, informed him that it would be unable to pay, and, after the assessor-collector "acquiesced in J.C. Evans' representation of inability to pay," J.C. Evans entered into a short-term installment agreement with the assessor-collector. 4 S.W.3d at 452 (emphasis in original). The Austin Court of Appeals concluded that, as a result of this conduct, J.C. Evans substantially complied with the objectives of subsection (d) by "notifying the interested parties that certain tax revenue could not be paid prior to the delinquency date, and also by specifying when and how it would be paid." Id.

Section 25.25(e) requires a taxpayer to either pay at least a portion of the assessed taxes before the delinquency date pursuant to section 42.08(b) or file an oath of inability to pay the assessed taxes pursuant to section 42.08(d) or the taxpayer "forfeit[s] the right to a final determination of the [correction] motion." TEX. TAX CODE ANN. § 25.25(e). Thus, as we have

already determined that Boze' did not pay any portion of the assessed taxes, to avoid forfeiture, Boze' must have filed an oath of inability to pay before the Board considered his correction motions.

It is undisputed that Boze' did not file an oath of inability to pay until May 29, 2009, with his original petition for judicial review, more than one month after the Board denied Boze's correction motion for the 2003 tax year and dismissed his motions for the 2004 and 2005 tax years. The only evidence that Boze' informed either the taxing authorities or the Board that he could not pay the assessed taxes is his self-serving and conclusory statements in his first amended petition for review and first amended oath of inability to pay that he informed the Harris County assessor-collector "in 2006" that he "could not pay taxes for personal property that never existed" and that he told a Board member, when asked at the hearing whether he had paid the assessed taxes, that he had not paid the taxes "because [he] did not have the money to pay taxes, plus penalties and interest, for the tax years in question." Although Boze' noted that his hearing before the Board was recorded, he did not attach a transcript or reporter's record to his petition for review, oath of inability to pay, or response to HCAD's motion to dismiss. Cf. J.C. Evans, 4 S.W.3d at 452 (holding taxpayer substantially complied with section 42.08(d) when it contacted taxing authority before delinquency date, informed taxing authority that it could not pay assessed taxes, and entered into installment agreement to pay taxes).

Because Boze' did not file an oath of inability to pay before the Board considered his correction motions, Boze' "forfeit[ed] the right to a final determination" of the motions. We hold that the trial court correctly determined that Boze' did

not substantially comply with section 42.08, which was a prerequisite to the Board determining his correction motions, and, thus, the trial court correctly granted HCAD's motion to dismiss for lack of jurisdiction.

We overrule Boze's sole issue.

### Objection to Visiting Judge

■ Although he does not present this argument as a distinct issue on appeal, Boze' argues that if he had received the required notice that a visiting judge would be presiding over the hearing on HCAD's motion to dismiss, he "would have exercised [his] right to object to this assigned visiting former judge by filed written motion" pursuant to Government Code section 74.053(c). HCAD contends that Boze' waived this complaint because he did not object before the start of the hearing and he cannot raise this argument for the first time on appeal. We agree with HCAD.

Government Code section 74.053 provides that when a judge is assigned to a trial court, the presiding judge shall, "if it is reasonable and practicable and if time permits," give notice of the assignment to the attorneys representing each party. TEX. GOV'T CODE ANN. § 74.053(a) (Vernon 2005). Any objection to the assignment

> must be filed not later than the seventh day after the date the party receives actual notice of the assignment or before the date the first hearing or trial, including pretrial hearings, commences, whichever date occurs earlier. The presiding judge may extend the time to file an objection under this section on written motion by a party who demonstrates good cause.

*Id.* § 74.053(c).

■ The Texas Supreme Court has held that "[a]n objection to a judge assigned under Chapter 74 is timely if it is

filed before the very first hearing or trial in the case, including pretrial hearings, over which the assigned judge is to preside." *In re Canales,* 52 S.W.3d 698, 704 (Tex.2001). "Once an assigned judge has heard any matter in a case, the parties have waived the right to object to that judge under section 74.053 of the Government Code." *Id.; see also In re Hourani,* 20 S.W.3d 819, 823 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) ("Subsection (c) [of section 74.053] leaves no doubt that the objection under subsection (b) necessary to trigger a right to removal may *only* be made before the visiting judge takes action on the case. The window of opportunity terminates when the first hearing or trial *'over which the assigned judge is to preside'* begins.") (emphasis in original); *Holstein v. Fed. Debt Mgmt., Inc.,* 902 S.W.2d 31, 37 (Tex.App.-Houston [1st Dist.] 1995, no writ) ("To preserve his error for appellate review, Holstein should have objected to the visiting judge before the motion for summary judgment was resolved (if he was informed of the appointment of the visiting judge); if he was not informed of the appointment, Holstein should have filed a motion for new trial objecting to the appointment of the visiting judge. He did neither.").

Although Boze' asserts that he did not receive notice of the assignment of a visiting judge until the day of the hearing on HCAD's motion to dismiss, it is undisputed that he did not object to the assignment at any time before, during, or after the hearing. He did not file any type of post-dismissal motion objecting to the assignment. We therefore conclude that Boze' failed to preserve this complaint for appellate review.

### Discovery Conduct

■ Additionally, Boze' complains that HCAD refused to comply with his proper

discovery requests by providing "improper, intentionally evasive, conflicting responses" and that it "intentionally, and in bad faith thwarted, concealed and/or circumvented the discovery of information relevant to [Boze's] appeal against [HCAD]." HCAD contends that Boze' waived these complaints because he never requested a ruling on the objections that HCAD had made to his discovery requests, nor did he file a motion to compel HCAD to properly respond.

■ If a party is not satisfied with an opposing party's discovery objections or responses to discovery inquiries, that party may move the trial court to compel discovery. *See* TEX.R. CIV. P. 215.1; *see also* TEX.R. CIV. P. 193.4 (providing that any party may request a hearing on an objection or claim of privilege to a discovery request). To preserve error on a discovery dispute, the appealing party must obtain a ruling by the trial court on the discovery issue. *See Goodchild v. Bombardier–Rotax GMBH Motorenfabrik,* 979 S.W.2d 1, 6–7 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) ("The statement of facts from the hearing indicates appellants raised their complaints [regarding a motion to compel interrogatories and a response to a motion for production] at the hearing, but they did not obtain a ruling from the trial court on the motion and they did not object to the trial court's failure to make such a ruling."); *see also* TEX.R.APP. P. 33.1(a)(1)(A) (requiring, for error preservation purposes, complaint to trial court by timely request, objection, or motion stating grounds for ruling with sufficient specificity to make trial court aware of complaint and ruling on request, objection, or motion); *Hayes v. Wells Fargo Bank, N.A.,* No. 01–06–00720–CV, 2007 WL 3038043, at *5 (Tex.App.-Houston [1st Dist.] Oct. 18, 2007, pet. denied) (mem. op.) ("Aggrieved parties in a discovery dispute must obtain a ruling before trial begins in order to preserve error. Having failed to obtain a ruling on his discovery request before trial, Hayes waived any error.").

Here, the record reflects that HCAD objected to a substantial number of Boze's discovery requests. Boze' complained about HCAD's objections and its discovery answers in his responses to HCAD's motion to dismiss. However, he never filed either formal objections to HCAD's answers or a motion to compel discovery, and he did not request a hearing on HCAD's objections. The record reflects that the trial court did not issue any rulings on discovery issues. We therefore conclude that Boze' has failed to preserve any complaints about HCAD's discovery conduct for appellate review.

### Failure to File Findings of Fact and Conclusions of Law

■ Before filing his appellate brief in this case, Boze' filed a "motion to reverse and remand for a new trial for error not curable for failure of the trial court to file findings of fact." Boze' contended that because the trial court failed to file findings and conclusions, he was "left to guess the reasons for the decision of a visiting former judge to grant dismissal of this case" and he "[could not] properly present [his] case to this Appeals Court." Although Boze' mentions in his appellate brief that the trial court failed to file findings and conclusions, he does not present further argument regarding how the trial court's failure prevented him from presenting his case on appeal, and he does not present this failure as a separate issue supporting reversal of the trial court's judgment.

■ A party is entitled to findings of fact and conclusions of law after a conventional trial on the merits to the court. *See* TEX.R. CIV. P. 296; *IKB Indus. (Nige-*

*ria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 442 (Tex.1997). A "trial" is a hearing in which the court hears and receives evidence. *Gen. Elec. Capital Corp. v. ICO, Inc.,* 230 S.W.3d 702, 711 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). If the trial court renders judgment as a matter of law, such as when a court grants a motion to dismiss for lack of jurisdiction, findings and conclusions are not improper, but they have no purpose and should not be requested or considered on appeal. *See Pro–Line,* 938 S.W.2d at 443; *F–Star Socorro, L.P. v. El Paso Cent. Appraisal Dist.,* 324 S.W.3d 172, 175 (Tex.App.-El Paso 2010, no pet.). "This is especially true when a plea to the jurisdiction does not involve disputed facts." *F–Star Socorro,* 324 S.W.3d at 175 (citing *Haddix v. Am. Zurich Ins. Co.,* 253 S.W.3d 339, 346 (Tex.App.-Eastland 2008, no pet.)). When reviewing these decisions, we exercise our own judgment in determining each issue, and, therefore, we "cannot consider findings and conclusions even if they are included in the record." *Id.*

The only issue before the trial court in HCAD's motion to dismiss was whether the trial court lacked subject-matter jurisdiction because Boze' did not substantially comply with the payment requirements of section 42.08 as a prerequisite to the Board's determination of his correction motions and, therefore, did not exhaust his administrative remedies. The facts relevant to this determination were undisputed: Boze' agreed that he did not pay any portion of the taxes assessed for the 2003–2005 tax years before the relevant delinquency dates, and he agreed that he did not file an oath of inability to pay until he filed his original petition, more than one month after the Board issued its decision regarding Boze's correction motions. *See F–Star Socorro,* 324 S.W.3d at 175 ("While the parties expressed disagreement about the legal effect of the facts in this case, the

facts related to EPCAD's jurisdictional arguments are undisputed. Consequently, there were no fact issues for the trial court to resolve prior to making its decision, and findings of fact and conclusions of law would have served no purpose."). In its order on HCAD's motion, the trial court explicitly stated that "[t]he Court, having considered the pleadings on file and having heard the argument of counsel, finds that [Boze'] did not substantially comply with Property Tax Code 42.08 and the Motion to Dismiss should be granted." Because the relevant jurisdictional facts were undisputed, there were no factual issues for the trial court to resolve, and findings of fact and conclusions of law would not serve any purpose on appeal.

■■■ Furthermore, an error in failing to file findings of fact and conclusions of law when properly requested is presumed harmful unless the record affirmatively shows the complaining party suffered no harm. *Midwest Med. Supply Co. v. Wingert,* 317 S.W.3d 530, 535 (Tex.App.-Dallas 2010, no pet.) (citing *Larry F. Smith, Inc. v. The Weber Co.,* 110 S.W.3d 611, 614 (Tex.App.-Dallas 2003, pet. denied)). "An appellant is harmed if, under the circumstances of the case, it must guess at the reason the trial court ruled against it." *Id.*

■■ Any error arising out of the trial court's failure to file findings and conclusions was harmless in this case. Boze' was able to present his issues on appeal, and we are able to address and decide those issues. *See White v. Harris–White,* No. 01–07–00521–CV, 2009 WL 1493015, at *6–7 (Tex.App.-Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op.); *see also Polycomp Admin. Servs., Inc. v. Jackson,* No. 01–09–00999–CV, 2010 WL 1611760, at *10 (Tex.App.-Houston [1st Dist.] Apr. 22, 2010, no pet.) (mem. op.) ("Regarding Po-

lycomp's second issue that challenged the trial court's refusal to issue findings of fact and conclusions of law, we do not reach this issue because Polycomp has been able to successfully present its appeal without those findings.").

We therefore deny Boze's motion asking us to reverse and remand this case to the trial court for its failure to file findings of fact and conclusions of law.

## Conclusion

We affirm the judgment of the trial court.